Our first case this afternoon is case number 4-150-225. Herbst v. Geoffrey, LLC, DBA Toys R Us. And for the appellant, we have Sean Oswald and for the appellate, Garrett Boehm, is it? Boehm, correct. You may proceed. May it please the Court, my name is Sean Oswald. I represent the plaintiff appellant, Rebecca Herbst. In the interest of disclosure, as I went to shepherdize one more time yesterday to make sure there were no changes, one thing after another got in the way and I didn't finish that until this morning. And as I finished it, I discovered that in fact there has been a significant ruling since my brief was written. The Illinois Supreme Court has ruled on the Seymour v. Collins matter, which I believe changes a lot of the arguments that I might have otherwise made. We had argued in our brief with regard to the issue of oath. Oath has been definitively taken out as a required element. And the Supreme Court decision seems to focus on several different issues rather than that. Most importantly, the Supreme Court decision seems to focus on, well first off, it states bluntly that they found that the failure to disclose a personal injury action to the bankruptcy court was in and of itself not sufficient grounds for judicial estoppel. And in fairness though, moving on, what they were evaluating was an intent to deceive. They were assessing whether or not the plaintiff appellate had had an intent to deceive the bankruptcy court and thereby receive some sort of benefit. They've laid out the five factors again and have varied them a little bit from the five factors that were previously laid out in series and its ilk. Those five factors in determining judicial estoppel are that two different positions have to have been taken, that those positions have to be factually inconsistent, that they have to be taken in separate judicial matters, that the intent of the trier is intending that the trier should accept the truth of the facts that are alleged in both of the separate proceedings, and that there's either a success in the first proceeding or that there's some benefit received from that first proceeding. Here, the fact that is being questioned is whether two different positions, a, that there was no mention of the bankruptcy, excuse me, of the personal injury as an asset to the bankruptcy court, and b, then obviously the assertion of that claim as a personal injury claim in McLean County. Obviously, if that's significant, those are factually inconsistent, that you cannot have both asserted the claim as a personal injury lawsuit and then it not have been mentioned to the bankruptcy court. The Supreme Court found that the plaintiff appellant in Seymour did have a legal obligation to notify the bankruptcy court about the accrual of the cause of action for the personal injury claim, even though that cause of action accrued after the inception of the bankruptcy court, actually quite a bit after the inception of the bankruptcy estate. So you're conceding that your client had that obligation? We're conceding that, correct, that the Supreme Court has found that there's a legal obligation to do so. I think that it's distinguished. It's very clear that they definitely held that way. Right, but I believe in the Seymour case, there's no doubt they point blank held that that is a legal obligation. Then they went on to sort of parse it out a little bit after that. Obviously, there were several judicial proceedings. Obviously, in signing a statement of her assets, the plaintiff appellant intended for the bankruptcy court to accept that as a list of her assets. And obviously, in filing the personal injury lawsuit, she intended that that court would accept that she had suffered a personal injury that was the fault of another party. I'll tell you what I did not find clear in the Supreme Court's case was the standard of review. They spoke about it, and I read it a couple of times, but I'm not sure I understand exactly what Justice Carmeier was saying. What's your take on it? Well, I think that their take on the standard of review was exactly what we had argued in our brief as to the standard of review, in that there is a presumption that when you are reviewing judicial estoppel, that that would be an abuse of discretion standard. But what I believe that the Justice said was that if that granting of judicial estoppel then removes the cause of action, that it shifts to a de novo review because it's eliminated the claim. Then the standard of review becomes one which is more a summary judgment standard of review, which is, as we know, a de novo review. What standard of review did the Supreme Court apply? Well, the Supreme Court said that they first looked through these five factors, and they asked whether the lower court had actually looked at these five doctrines, or the five elements of the doctrine of judicial estoppel to invoke that. And I believe that in looking at that, they did a de novo review. And then I believe that what they did in the Seymour case was they assessed whether or not the court had actually exercised its discretion. I believe, in fact, that they really found in Seymour that the court had not even actually exercised its discretion. What did the court do in our case? Well, in our case, the decision rendered by the court states that a motion for summary judgment pursuant to 735 ILCS is granted as a matter of law on all claims of Rebecca Herbst, and this matter is dismissed with prejudice with each party to bear its own cost. So it would sound as if, then, the trial judge did not use any discretion and simply found that as a matter of law, because of factors permit, that summary judgment was properly granted, right? Yes, Your Honor. In fact, I had intended to argue that. And obviously, there was no actual recorded record taken of the oral arguments. We had some discussion that day about whether the recording system was working or not, and it wasn't working. I had the privilege of being the only one here in this room that was there that day. And we laid everything out for the judge, and I don't believe the judge exercised any discretion. I believe that she ruled that the law was the law, and that there were these two separate positions taken, and therefore, judicial estoppel applied. So I don't believe she exercised any discretion. For those reasons, I do believe that the standard of review, though, here is first a de novo review to see if these factors have been weighed out by the court. And I don't believe that in our case, the court did exercise its discretion. In that sense, I think Seymour v. Collins is actually controlling on that particular aspect of this. In moving forward beyond that issue, in Seymour v. Collins, they, again, have stated that it's not enough that there were these two or a failure to disclose this to the bankruptcy. That, in and of itself, was not enough to file or to find judicial estoppel. The court found that there had to be an intent to deceive, an intent to game the court. And clearly, from what is available to the court, there was no intent to game. The plaintiff, appellant, filed her statement of financial affidavits. She changed attorneys. She did a number of things in which she verified those pleadings before the accrual of the cause of action for the personal injury claim. After the cause of action for the personal injury claim, the only thing that was done was a petition for a hardship adjustment to her payments. You say the only thing. That's pretty significant. In fact, that was actually not. It was a motion for discharge, wasn't it? No, it was actually, I believe, Your Honor, a petition simply to modify the payments based upon that. Based on the injury, based on the surgery that she had to have as a result of the injuries in the personal injury case. Correct. Based upon the time away from work that she had following the surgery that she alleges was caused by the personal injury. Which is interesting because Seymour has exactly the same issue. Not quite, counsel. In Seymour, there were three motions filed. All of them were filed prior to the personal injury action. Here, we have a motion to discharge filed after the personal injury action is filed. You're saying that's not significant? I don't think it's significant in this sense because as the court found and they agreed with the dissent in the appellate court's decision of Seymour V. a diminishment of the plaintiff appellant and their ability to pay. And since judicial estoppel would require that the two separate positions grant some sort of benefit to the plaintiff appellant, the plaintiff appellant's motion was denied. She continued to make the same payments that she was making before. And, in fact, completed all of those payments in her bankruptcy. I don't know, counsel. In Seymour, the Supreme Court of Seymour, they say where there is affirmative, uncontroverted evidence that debtors did not deliberately change positions, etc., etc. And the evidence in Seymour for the Supreme Court to consider was an affidavit from the bankruptcy trustee, an affidavit from the bankruptcy attorney, an affidavit from the debtor. Do we have any of those three things in our case? No, we do not, Your Honor. So we don't have any affirmative, uncontroverted evidence that the debtors did not deliberately change positions. No, Your Honor. But when granting summary judgment, the facts need to be viewed in the light most favorable to the non-moving party. Then why did the Supreme Court use that language? It was relevant to that particular claim. But I do think as we go through the Supreme Court's decision, that they also use at different times the language that there was no evidence of an intent to deceive or game the court. And, again, in the case of Barr, there is no evidence of an intent. I don't know. You file a personal injury action, and then based upon the personal injury, you go back to the bankruptcy court with the idea of reducing the amount of money you're going to pay to the creditors and don't inform the bankruptcy court that, oh, by the way, I have also filed a personal injury action, which may, in fact, accrue to the benefit of the bankrupt estate. You're saying I can't draw an inference from that? Well, Your Honor, it's not my place to assume what you can and can't draw an inference from. I asked a bad question. Would it be reasonable to draw an inference from this motion being filed subsequent to the personal injury action? Perhaps if a benefit had been accrued to the plaintiff appellant in that her payments had been reduced because of that. So if the court had ruled the other way, then we wouldn't be here today, I guess. Well, I think that would strengthen the proposition that that inference could be drawn. But I think there's more at stake here. Keep in mind that the petitioner accrued tens of thousands, in fact, over $100,000 in medical bills, allegedly as a result of this personal injury claim. Those bills are not included in the bankruptcy. Those bills maintain liens, which would have been a priority claim against the personal injury claim. Note that the plaintiff appellant entered into the payment structure with the bankruptcy estate that the trustee set up, that moved forward, that she paid the entire payments over the five years, and that even as we sit here today, we're still nowhere near going to a trial on the personal injury claim. And so I guess, is the court going to then order that every bankruptcy estate in which something like this arises has to be expanded beyond the typical five years and just is going to remain open? I don't believe that the accrual of this claim gave the plaintiff any enhanced ability to make payments during the five years to the creditors under the bankruptcy. And therefore, I'm not sure how the bankruptcy creditors actually lost out on anything. Because, again, it's the customer record. Well, then why do the federal courts say that that's the law, you've got to disclose this? What would be the point? No point, because there's no additional money for the estate to distribute among creditors anyway. I think that the Supreme Court of Illinois in the Seymour v. Collins indicated that there are some discrepancies between how federal courts have ruled on various disclosure and bankruptcy, and that they opted not to really go into that because they felt there were other issues sufficient to decide it under Illinois law. As we cited in our brief, there's an entire section of the Bankruptcy Code, which is 11 U.S.C.A. 541A, which sets forth certain things that have to be disclosed, and none of those would match up with a personal injury claim. Now, there are, as the Court has pointed out, there are federal decisions from the bench that would say that those... Well, did the Supreme Court accept that as the law, did it not, in Seymour? It did. And, again, we acknowledged from the first moment of my arguments here that under Seymour we would have had an obligation. But Seymour seemed to think that if the failure to disclose that was inadvertent, if she did not actually know that she had to do that, then that does not alone provide a basis for the judicial estoppel to apply. And because the remedy by judicial estoppel is so severe here, it's the removal of her claim, again, the facts need to be viewed in the light which is most favorable to the non-moving party here. And, you know, I don't know that the Court even wants to entertain this. I argued some public policy issues. First off, if we find this conclusion, then the defendant obtains a potential windfall by not being held responsible for their actions. The debtors that are owed the medical bills related to this claim, they may have no remedy then at that point in time. And certainly there's no guarantee one way or the other. In fact, that's the whole gist. This is a speculative recovery. This is not a solid, tangible asset. It's a speculative asset at best. We may not prevail in that claim, but by totally kicking this issue out, by dismissing the claim, you also work contrary to the interests of those other parties. Your Honors, in summary, we believe that the Seymour v. Collins case is controlling here. We believe that it finds the failure to disclose is not sufficient grounds for judicial estoppel in and of itself. We believe that it finds that there must be evidence of an intent to deceive or an intent to gain the Court and that nowhere in the record does that evidence exist. For those reasons, we would ask that you reverse the decision of the Circuit Court and allow the underlying case to proceed forward. Okay. Thank you, Mr. Oswald. You'll have rebuttal. Mr. Boehm. May it please the Court, Counsel. My name is Garrett Boehm. I'm here today on behalf of the Toys R Us entities. The purpose of judicial estoppel is to preserve the integrity of the judicial system. The focus is not upon the relationship of the parties. If this Court were to reverse the Circuit Court's decision on judicial estoppel, it would not be preserving the integrity of the judicial system. And in essence, what it would really be doing would be to endorse or actually condone legal malpractice potentially committed by Ms. Herbst's bankruptcy attorney. This hasn't been discussed at length within the briefs, but in looking at the record on appeal, within the response brief submitted to the Circuit Court, there's one sentence that says, let me find it exactly, that she did advise, Ms. Herbst did advise her bankruptcy attorney as to the existence of this claim. And upon advice of counsel, did not need to modify any of the documentation of her bankruptcy. So she knew of the claim, and she asked her bankruptcy attorney, reportedly asked the bankruptcy attorney about it. There's no affidavits here. And that's crucial, I think, for how this Court looks at how it decides here versus what happened in Seymour. Was it a verified response? No, it was not. It's simply one statement within that response. But it's not established that the plaintiff had an intent to deceive the bankruptcy court. The intent to deceive is shown within the documents that were submitted. She submitted her statements of financial affairs, and then three months thereafter, her injury occurred. Right, but I'm saying if her lawyer told her, don't put that in there, you don't need to include that, how can you establish that she intended to deceive? Sure, and she is responsible for the actions of her attorney. That attorney is her agent. She incorporates all of that. And she acted upon that statement and intentionally did not disclose her asset, the value of her asset being that personal injury case, to the bankruptcy court. That was an intentional act. So your argument, if I'm following, is she intentionally did not disclose it, but she did so based upon the advice of counsel. Nonetheless, you're saying it's tough. She's responsible for it. Her attorney did. Correct. So she should be pursuing a malpractice claim against her attorney to give her bad advice about disclosing the bankruptcy. Correct. Somewhat as the analysis is pretty akin to what happens in the Cannon-Stokes v. Potter matter. It's Justice Easterbrook's decision about 2006, I believe, in the Seventh Circuit. But yes, short story, if she has a claim to pursue now, it's a legal malpractice claim. Not a claim before the circuit court. Because to allow that would be contrary to preserving the integrity of the judicial system. Is there kind of a leap there? I guess for me there's a difference between I mention this to my attorney and my attorney says wrongly that I don't have to disclose this versus my attorney says, no, let's not tell them about that because we don't want them to know you have this asset. I think what that goes to, and I think there is a difference, but what that goes to is what is inadvertence. And the Burge Court gives a pretty good description of what inadvertence is. And the Burge Court says debtor's failure to satisfy statutory disclosure duty, which is what happened here, is inadvertent only when the debtor either lacks knowledge of the undisclosed claims, that doesn't apply here, or has no motive for their concealment. That doesn't apply here either. The motive being the failure to disclose that asset, it's not incorporated within the bankruptcy estate, the creditors can't make a claim as to that asset, and she receives a discharge, the benefit of that discharge. But has Seymour changed that? I mean, Seymour speaks to the court considering whether or not there's evidence that the debtor sought to obtain an unfair advantage by deliberately changing positions in two different judicial proceedings. So that's what Seymour says. Seymour is an interesting, and I would submit peculiar case. It is a Illinois Supreme Court case. Yes, it certainly is, right across the street. And I listened to the oral argument just a couple of days ago, watched it actually, the video. And what happened in Seymour, we had a little discussion about the standard of review, which I think is also important. I read it four times, and I'm still trying to figure it out. Well, it makes me feel better. I'm not the only one. My interpretation of it is that when there is a summary judgment decision that terminates the cause of action, then whether or not the factors of judicial estoppel have been met is reviewed de novo. Then whether or not the circuit court was correct in applying judicial estoppel is reviewed for abuse of discretion. Here, I think all of the factors are met, just as they were in Seymour. Here, as to whether or not the circuit court exercised its discretion properly is different, in that we don't have a transcript. We don't have a bystander's report. That's plaintiff's job. Plaintiff's job is to provide this court with an adequate record on appeal, which I would contend this court does not have. So it cannot conduct that abuse of discretion review. Well, so why wouldn't we remand it then? Because it's not suitable for summary judgment, because there are still facts out there we don't know. Well, the de novo aspect is whether or not the judicial estoppel factors have been met. And I would say the answer to that question is yes. Go through one, two, three, four, five, whether it's a benefit or inconsistent positions. I think they're all met.  And when a plaintiff or an appellant has not provided an adequate record on appeal, that abuse of discretion question is waived. And there's plenty of cases in the appellate court, and I'm sure in this district, discussing where an appellant has failed to provide an adequate record on appeal, what the ramifications of that act are. Do you believe the trial court knew that it was within its discretion, that it had to exercise its discretion? I can't tell on this record. I would submit yes. But in looking at this record as I must as the appellate attorney, I can't tell. I mean, I could go beyond the record and ask questions and that sort of thing, but on this record, I can't tell. And we can't go any further because of that. In Seymour, it was a different circumstance. But that brings me back to my question from a minute ago. Why wouldn't it be better to remand it so any additional facts that a court needs to know, specifically this court, can be developed? I'm not aware. You're saying he didn't provide the record. It seems like to me the record was provided. It's just that the record isn't developed enough for this court to make a decision whether the summary judgment was properly graded. I would submit that the burden was upon the appellant to create a bystander's report, have that agreed to by an appellee and submitted to the circuit court for approval. And through that bystander's report, then you would have had a sufficient record on appeal. But that wasn't done. I don't know of any cases standing here where, in this circumstance, where there wasn't a transcript of the hearing that's reviewed for abuse of discretion and there isn't a bystander's report that the case is remanded to try and figure out what happened. So you're wanting us basically to follow that notion that we are to assume, in the absence of a record provided, that the trial court followed the law and entered a proper decision. Correct. Well, this court will review whether or not the factors are met, but then the circuit court followed the law and, in its discretion, decided that judicial estoppel should be applied. Now what happened in Seymour is the Supreme Court said that the circuit court did not exercise any discretion. And then from then on, I can't tell what the standard review was in the Supreme Court. It seems like they did their own de novo review as to whether or not judicial estoppel should be applied in that case. It seems like it was a new standard. It was called the Supreme Court review. You said it, Justice. I think they must have applied ultimately, without saying so, a de novo review. I think that's what they did. Because they found that the circuit court said its decision was mandated rather than exercising its discretion. But, Counsel, you still never really answered my question, which was, what are we to look at? Isn't the query now whether or not the debtors sought to obtain an unfair advantage by deliberately changing their position versus you were talking about inadvertence under Birch? Well, I would suggest, Your Honor, that the advantage is shown through the documents that Toys R Us submitted to the circuit court, specifically those bankruptcy documents that create a timeline that shows she knew what her assets were, that she then obtained a new asset, which was the personal injury action, and then didn't report it, despite her duty to supplement those documents. So, she wanted the bankruptcy court to accept as true, over the period of five years, the representations made in that statement of financial affairs. And she had five years to supplement it, and she didn't. If it turns out that she didn't because of bad advice from the bankruptcy attorney, well, that's a legal malpractice. And that's not a sufficient reason to remand this case for further proceedings on the personal injury case before the circuit court. Well, why should Toys R Us get a benefit out of this? It's kind of a public policy argument, I understand, but... Well, that really goes to... That they are going to possibly receive a benefit that they didn't earn in any way. That's why I started by saying the purpose of judicial estoppel is for the preservation of the judicial integrity, the integrity of the judicial system, there it is, rather than a focus upon the relationship of the parties. It's not... The backbone, the purpose of the doctrine is not assessing, well, which party comes out of this better than the other. It's where contrary positions advance before two different tribunals, and the party advancing the contrary position wants to benefit in two different ways, in two different tribunals. I get your point. It would sit better with me, however, if the creditors, at some point in the future, who didn't get paid fully, and a presuming plaintiff in its personal injury case gets either a settlement or is able to collect substantial funds. It would sit better with me, as I started my sentence with, if the creditors actually had a right to come back against some of those proceeds received through the personal injury case, instead of the defendant in the personal injury case. That, from an equitable standpoint, makes more sense. You don't have to answer that. I was just rambling from... No, I understand. I mean, there's a certain conundrum that this court faces, if you're looking at it from a purely equitable standpoint. And that's why we turn to what the real purpose is for the application of judicial establishment. I guess, just to follow up on that, it would almost seem that the judicial estoppel should be applied in a more egregious case than where there was just following the advice of counsel by not making a disclosure to the bankruptcy court. If we're going to invoke judicial estoppel and complete this supposedly injured person from going forward with her lawsuit against the tortfeasor. As to whether it's an egregious case or not, the plaintiff could have come forward, like the plaintiff did in Seymour, with a number of affidavits and said, you know, this was a mistake. This was inadvertent. I didn't mean to hoodwink anybody. But we don't have those affidavits here. I mean, in Seymour, we've got an affidavit from a bankruptcy trustee, which I've never seen that before. So it was really a particular circumstance in Seymour, which showed that it wasn't. And I am correct, if I'm not, that the motion in this case was actually filed after the personal injury case was filed, whereas in Seymour, the motions to modify the bankruptcy plan were all filed prior to the personal injury action. Okay, correct. Well, I think that's significant. Do you? Apparently not. I don't see that particular timing as definitive here. I mean, what is clear is that she knew of this claim for a very long time and didn't disclose it. Could have. And if she had, we wouldn't be having this discussion. I mean, it's hard to say what would have happened before the bankruptcy court. A bankruptcy trustee decides this isn't an asset that I want to pursue, and then she can go do what she wants with it. Or a bankruptcy trustee pursues it and is able to get a settlement or a judgment, and then the whole issue is resolved. But we don't have those facts. But we do know the mere failure to disclose is not enough. From Seymour, we know that. Well, under the circumstances of Seymour, I mean, the Supreme Court on ten different occasions, I think, says in this case under these circumstances. So it's pretty narrow, in my reading at least, as to its application going forward. I mean, certainly the standard review is there for all courts to take into account,  I don't think there's anything else. I'm looking through some of the questions. I think that's all I've got, unless there are any other questions from the court. I would just ask that we refer. Counsel, do you think your case was stronger prior to the Supreme Court's reversal? It was easier. It was easier. All right. Thank you. Okay, thank you. Is there any rebuttal? No. All right. Thanks to both of you. Interesting case, interesting arguments. The case is submitted, and the court stands at recess.